**OETJEN, Appellee v GOFF-KIRBY CO., Appellant.**

Ohio Appeals, 8th District, Cuyahoga County.

No. 18573.   Decided July, 1942.

Irwin Greene, Cleveland, for appellee.
J. R. Kistner, Cleveland, for appellant.

118

Doyle, PJ., and Stevens, J., of the 9th District, and Guernsey, J., of the 3rd District, sitting by designation.

## OPINION

By GUERNSEY, J.

The notice of appeal herein prescribes an appeal on questions of law and fact, and bond has been given perfecting the appeal as an appeal on questions of law and fact. Bill of exceptions, assignments of error and briefs have also been filed herein, perfecting the appeal as an appeal on questions of law.

The appeal is from a judgment of the Court of Common Pleas of Cuyahoga county, Ohio, in an action pending therein wherein the appellee, William H. Oetjen, was plaintiff, and the appellant, Goff-Kirby Company, was defendant.

There has also been filed herein, the following stipulation as to the trial of this case in this court:

"It is hereby stipulated an dagreed by and between the parties to this appeal, by their respective counsel, that: The trial of this cause, de novo in the Court of Appeals may be had upon the facts contained in a bill of exceptions filed in this cause, including the exhibits contained therein, together with a certain stipulation, supplementing said bill of exceptions, and filed in this cause in the Common Pleas Court on the 13th day of February, 1941, save and except the right to trial by jury on the question of damages is not hereby waived by the plaintiff."

The petition in this cause, omitting the caption, signature of attorney, and oath of plaintiff thereto, is in the words and figures following, to wit:

"Now comes the plaintiff and says that the defendant is a corporation organized and existing under the laws of the State of Ohio, doing a coal business, and is the owner of three acres of land situated between Collamer St. and Coit Avenue, East Cleveland; that the Euclid frontage is on the level with Euclid Avenue and then takes a sudden drop and continues to slope in a northerly direction.

"Plaintiff further says that he was at the time herein men-

tioned, and is now, the owner of two brick apartment buildings, consisting of twenty-two suites and two wooden buildings with stalls for five automobiles, situated on the westerly side of Collamer Street, close to Euclid Avenue and adjoining the property of the defendant, and further known as 1766-70 Collamer Street, East Cleveland, Ohio.

"Plaintiff further says that the defendant caused to be erected, adjoining plaintiff's property on the west, a spur track extending from the main line of the N. Y. C. & St. L. R. R. Co. which spur track is carried along upon overhead supports and trestle work; that underneath such spur track, and constructed as a part of the overhead supports and trestle work, are large bins into which are emptied the contents of freight cars conducted upon such spur tracks; that such containers are equipped with apparatus which permits the bottoms thereof to open up and discharge the contents into trucks or vehicles driven in and placed under the bins or containers; that some of the spur track extends southerly up to and adjacent to the property of plaintiff, that the defendant continuously uses such spur track for the receiving and unloading of cars containing all kinds of coal, that the coal is dumped into the bins underneath the spur tracks and from time to time is discharged therefrom into waiting vehicles, that from time to time it dumps all kinds of coal in various places on its land, that about the year 1937 it commenced dumping and storing all kinds of coal immediately opposite the property of the plaintiff, that the said defendant, through its agents and servants. without regard for the right of the plaintiff, uses and operates such spur tracks, the cars, bins, trucks or other vehicles used in connection therewith, so that plaintiff and his premises are greatly injured and damaged in this, that whenever coal is dumped from a railroad car into the bins, or cars unloaded and dumped onto the premises, or coal loaded into trucks and other vehicles, great clouds of coal dust and soft. small particles of coal arise and fill the atmosphere and descend and fall upon the premises of the plaintiff, that such coal dust and small particles of coal, descending upon his premises, have ruined and destroyed the exterior decorations upon his buildings, and so cover all of his premises that he cannot use part thereof for a garden, and that it is impossible to do any family washing upon the premises, as freshly-washed clothes which are hung out upon a clothesline to dry are soon covered with coal dust from the defendant's storage coal, that such dust fills the air and penetrates to the interior of plaintiff's buildings. rendering same undesirable; that a reasonable rental value of his two buildings of twenty-two suites, together with the garages, is $1000.00 per month; that he has been unable to keep the premises rented by reason of the acts of the defendant, as complained of, and as a direct and proximate result of the use the defendant is making of its premises, plaintiff has suf-

fered a loss by way of decreased, and loss of, rentals from his property in the sum of $3500.00; that he has been further damaged in the sum of $3000.00; that the use by the defendant of its property in the manner aforesaid, constitutes a continuing nuisance, which, if not abated, will compel plaintiff to bring actions from time to time for compensatory damages, and in the meantime, he will be deprived of the free enjoyment of his property, and that an abatement of such niusance will prevent a multiplicity of suits; that he has no adequate remedy at law, in that compensatory relief to him for special damages or loss he has suffered is insufficient, and if such nuisance is allowed to continue, he will be irreparably dam-aged.

"Wherefore, plaintiff prays for judgment in the sum of sixty five hundred dollars ($6500.00), and that the court in the exercise of its equity jurisdiction, enjoin the defendant from maintaining such nuisance and order same abated, and for such other further equitable relief as this plaintiff may be entitled to."

To this petition the defendant filed its answer in which it admits its corporate existence, the nature and place of its business as alleged, and that it is the owner of the land described by the plaintiff, and generally denies the other allegations of the petition.

Upon the trial of the cause in the Common Pleas Court the parties waived a jury and submitted the cause to the court, upon the pleadings and the evidence, upon consideration whereof the court found for the plaintiff. Motion for new trial was duly filed by the defendant, which was overruled and the court entered judgment in favor of the plaintiff and against defendant, the material part of which judgment is as follows:

"The court finds: that the defendant is a corporation; that both the plaintiff and the defendant are the owners of the property set forth in the petition; that the piling, loading, unloading and the methods and means used in the handling of coal in so far as hereinafter appears only violate the property rights of the plaintiff and constitute a nuisance; that the plaintiff's right of action for damages is not an adequate remedy, therefore the plaintiff is entitled to an injunction against the defendant as prayed for in his petition and also entitled to damages. Now therefore, it is hereby ordered, adjudged and decreed that the defendant be, and hereby is, perpetually enjoined from piling or handling coal, or causing coal to be piled or handled by the use of conveyors or any other elevating machinery and equipment operated in the open air, upon the upper level of the defendant's premises, within one hundred fifty feet of plaintiff's property, and further providing that the defendant shall not pile coal. nor cause coal to be piled, on the upper level of its premises, to wit between the retaining wall now extending at right angles across the defendant's premises, directly west of

the plaintiff's property and parallel with Euclid Avenue within ninety feet of the nearest boundary line of the plaintiff's property, and further providing that the defendant shall not pile coal, nor cause coal to be piled, to a height exceeding ten feet in the open air in portions of said upper level area distant more than ninety feet from plaintiff's property line, and further providing that the defendant shall not pile coal, nor cause coal to be piled in the open air in portions of said upper level area distant more than ninety feet from plaintiff's property line without employing means or methods to prevent powdered coal or coal dust in substantial quantity from being carried into the air in such manner as to fall or be deposited in substantial quantity upon or within plaintiff's property. It is further ordered, adjudged and decreed that the plaintiff shall recover from the defendant as his damages the sum of one thousand dollars ($1000.00) and costs, for which amount judgment, to wit, the sum of one thousand dollars ($1000.00) and costs is hereby rendered against the defendant in favor of the plaintiff. It is further ordered, adjudged and decreed that the defendant shall remove, or cause to be removed on or before May 20, 1941, any and all coal now on the premises within the areas and to the extent herein prohibited, and further, in so doing, the said defendant shall use all reasonable care in preventing damage to the plaintiff's property. The defendant, having given notice of its intention to appeal, the bond is fixed as two thousand dollars ($2,000.00); the plaintiff, having given notice of his intention to appeal, the bond is fixed as five hundred dollars ($500.00)."

It is from this judgment that this appeal is taken.

Before considering the merits of the appeal it is necessary to determine whether the appeal shall be treated as an appeal upon questions of law and fact as to the injunctive relief prayed for in the petition, and an appeal upon questions of law as to the relief by way of damages prayed for in the petition, or should be treated as an appeal upon questions of law and fact as to both injunctive relief and the relief by way of damages prayed for in the petition.

It will be noted from an inspection of the petition that the injunctive relief and the relief by way of damages depends upon the same state of facts, differing from the cases such as actions for foreclosure of mortgages and recovery of money judgments for indebtedness secured thereby, where causes for equitable relief and for relief at law, based on different states of fact, are united in the same action.

In the petition in the instant case but one cause of action is stated and that is a cause of action in equity for an injunction, and incidentally for an accounting for damages. The right of plaintiff to an accounting for damages depends upon his right to injunction.

The cause of action stated is a chancery case and consequently neither party had a right to demand a trial by jury. **Converse,**

et al., v Hawkins, 31 Oh St 209. Wheeling & Lake Erie R. R. Co. v Horner, 33 Weekly Law Bulletin, 332, 53 Oh St 648. See also, Rowland v Entrekin, et al., 27 Oh St 47.

As the petition states but one cause of action and that cause of action is a chancery case, the appeal must be treated as one on law and fact wherein the whole case comprehending injunctive relief and relief by way of damages, is tried de novo in this court.

Upon the trial of this case de novo, this court, from the evidence, finds: The defendant, then known as "Goff-Kirby Coal Company," about 1910 established a coal yard on the three acres of land described in the petition, now occupied by it, to which it eventually took title in May, 1917, and that ever since 1910 the defendant has used and occupied this property as a coal yard. The coal yard is situated in a long established industrial area. Some building materials have been stored and sold from this yard during its existence. The amount of coal handled depends directly on the amount of business, and the time of year. The amount of coal stored at any one time in this yard has not been materially increased. In the usual course of business about twenty-five different types of coal are handled. The arrangement and use of the yard is not arbitrary, but is necessitated by the various types of coal and the means of handling which is necessary for certain types. On the coal yard, running from the main line of the Nickel Plate Railroad southerly to within one hundred feet of Euclid Avenue, is a spur track. The Nickel Plate, at the point of juncture, is elevated on a high fill. Thus, when the spur track leaves the main line and its fill, it is carried upon a trestle and is so carried until the level of the ground rises to the track level at a point some three hundred feet from Euclid Avenue. The trestle portion of the spur track is divided into two sections. In the more northerly section the track is carried on concrete foundations with no ties, so that a coal car may be dumped directly to the ground below or a waiting vehicle. At this point are dumped types of coal which are not harmed by rough handling. The process of dumping creates some dust as does that of loading these types of coal upon trucks by hand or by a loader.

The middle third of the track (which is the southerly half of the trestle) permits dumping from the bottom of the cars through the track into closed bins.

The southerly third of the spur track is "on the hill," at ground level. Coal handled here is Pocahontas lump coal which must be handled carefully to prevent breaking up of the lumps. All coal handled on the hill is processed, dust-proofed coal. Coal at this point is handled by shoveling it upon the endless belt of a conveyor which can and does pile coal up to forty-five feet from the track and up to twenty feet high. The conveyor is so constructed that it will carry the coal forty-five feet when its boom is horizontal, but

when the boom is raised, to pile coal higher, its horizontal reach is correspondingly lessened.

The area just described, "on the hill" is the part of defendant's land closest to plaintiff's apartments. but is separated therefrom by a tract of land owned by the Nelson Land Company.

Where the conveyor is used on this lump, dust-proofed coal, the spur track is two hundred feet from the rear of plaintiff's apartments.

The conveyor was put in operation "on the hill" in October or November, 1935, and approximately the same amount of coal has been piled on the hill ever since that date. Since 1932 all coal on the hill has been processed, dust-proofed.

Plaintiff purchased the apartments now owned by him, in February-March, 1937.

Prior to the closing of the deal for the purchase of the apartments, plaintiff, accompanied by the broker who had the apartments for sale, looked over the coal yard. He saw coal and knew it was a coal yard. He was there a number of times but never saw any coal cars on the trestle or handling of coal. In discussing the matter of the coal yard with the broker, plaintiff did not ask him about the storage of coal. He thought there was no reason to ask about the coal yard. The subject of coal dust did not come up because plaintiff did not think it important enough to discuss. Plaintiff did not try to find out how the defendant used the property "on the hill" and wouldn't know whether any dust reached the apartments from the lower level of the coal yard.

From the operation of the coal yard coal dust arises which at times, depending upon the direction and force of natural air currents, is carried by such currents to and upon the apartments of plaintiff and other apartments and residences in the vicinity, causing injury thereto.

There has been no material change in the method and means used in handling coal, or the quantities handled, or in the amount of coal dust arising from the operation of the coal yard, since the conveyor hereinbefore referred to was put in operation in October or November, 1935, "on the hill."

As there has been no material change since plaintiff purchased the apartments now owned by him. in the method or manner of handling coal, or in the quantities of coal handled, or in the amount of coal dust arising from the operation of the coal yard, plaintiff, at the time he purchased the apartments, having previously inspected the same and their surroundings, including the coal yard, should have reasonably anticipated the injury of which he complains in his petition.

The general rule applicable to the rights of persons such as plaintiff, acquiring property affected by a then existing nuisance, is set forth in 20 R. C. L., page 495. as follows:

"It is true as a general proposition, that one who voluntarily places himself in a situation whereby he suffers an injury will not be heard to say that his damage is due to a nuisance maintained by another, a principle which is expressed by the maxim volenti non fit injuria. The test of liability here, as in other situations, is the knowledge of the plaintiff respecting the consequences of his conduct. If it appears that he foresaw or might have foreseen the injury of which he complains, he will not be granted the relief which he prays."

Decisions of the courts of Ohio are in conformity with this rule. **Eller v Koehler, 68 Oh St 51, pages 56 and 57. Strothfang v Cincinnati Aluminum Castings Company, 13 Oh Ap 334. Gruie v Knight, 15 Abs 502 at 505. Steele v Rail & River Coal Company, 42 Oh Ap 228, at pages 238 and 239.**

The rule stated is one of greatest antiquity, appearing in Blackstone's Commentaries, Volume 2, page 402, in the following form:

"If my neighbor makes a tanyard, so as to annoy and render less salubrious the air of my house or gardens, the law will furnish me with a remedy; but if he first is in possession of the air, and I fix my habitation near him, the nuisance is of my own seeking, and must continue."

Applying the foregoing rule, we hold, upon the facts of this case as hereinbefore found, that the plaintiff is not entitled to any relief by way of either injunction or damages.

Decree will therefore be entered in favor of defendant and against the plaintiff and plaintiff's petition will be dismissed at his costs.

DOYLE, PJ., and STEVENS, J., concur.