**DAVIES, Plaintiff-Appellant, v COLUMBIA GAS & ELECTRIC CORP., et, Defendants-Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 3861. Decided March 19, 1948.

374

John L. Davies, Columbus, Payer, Bleiweiss & Mollison, Cleveland, Parks Chamberlain, Chicago, for plaintiff-appellant.

Eagleson & Laylin, Columbus, Luther Day, Cleveland, for defendants-appellees.

## OPINION

By THE COURT.

This is an appeal on law from the judgment of the Common Pleas Court of Franklin County, Ohio, overruling motion of plaintiff-appellant for leave to file an amended petition which is attached to the motion, and, a demurrer having been sustained to the original petition and plaintiff-appellant not desiring to plead further, from the order dismissing the action.

In order to properly comprehend the questions raised, a brief statement relative to several procedural steps in this litigation is necessary. This is a class action filed by John L. Davies, a resident of Columbus, Ohio, and a consumer of natural gas, on behalf of himself and other consumers of natural gas who purchased such gas during the period from 1929 to. 1939. inclusive, from the Ohio Fuel Gas Company, one of the owned subsidiaries of the Columbia Gas & Electric Corporation, or from several other subsidiary companies of said Columbia Gas & Electric Corporation, to wit: The Dayton Power & Light Company, the Northwestern Ohio Natural Gas Company, and the Cincinnati Gas & Electric Company, which distributed natural gas obtained from the grid system of mains owned and operated by the Ohio Fuel Gas Company to consumers within the State of Ohio. These Companies together with the Preston Oil Company and the Columbus Oil & Gasoline Corporation and fourteen of the principal executive officers of the above Companies were named defendants.

In the original petition the plaintiff alleged that the corporate and individual defendants had engaged in a conspiracy to secretly dilute the natural gas distributed by the Ohio Fuel Gas Company, and through it, by the other corporate defendants distributing natural gas to consumers in Ohio, by injecting into the mains inert flue gas or smoke, to conceal the practice and thus to defraud the consumers of natural gas on whose behalf the plaintiff purports to sue; that through such conspiracy and fraud of defendants all such consumers, which number between 550,000 and 700,000 were defrauded by being compelled to pay an overcharge by reason of such dilution. Plaintiff prayed for injunctive relief, both temporary and permanent, for an accounting, and for damages.

A general demurrer to the petition was sustained on the ground that the petition did not state facts sufficient to constitute a cause of action as a class suit. The Court granted leave to plaintiff to file an amended petition on his individual claim but did not expressly grant or deny the right to file an amended petition as a class suit. Plaintiff being uncertain as

to whether the order was a final order, appealed to this Court. Upon appeal this Court held **(Davies, etc., v Columbia Gas & Electric Corporation, et al., 34 Abs 473)**, that there had been no final order. In the opinion on page 477, this Court held:

"We, therefore, are of the opinion that the appeal should be dismissed and the cause be remanded to the Court of Common Pleas to permit the filing of an amended petition as a class suit, and that if a demurrer thereto be sustained, that the entry definitely show that the petition is dismissed."

This Court dismissed the appeal on the ground that there was no final order and remanded the cause to the Common Pleas Court. No objection was interposed to this ruling and no error prosecuted. Prior to perfecting the appeal, the plaintiff had filed in the trial court a motion for leave to file an amended petition as a class suit, a copy of the amended petition proposed to be filed being attached to the motion. After this Court dismissed the appeal, the motion was presented to the trial court for disposition. The motion was overruled. The order in part provided:

"And the plaintiff not desiring to plead further in the form of a class suit, and not desiring to file his amended petition herein for the purpose of setting forth his individual claim, as per leave for such purpose granted by the order of the court entered December 27, 1939, it is Ordered, Adjudged and Decreed, that this cause be and the same is hereby dismissed at the cost of the plaintiff."

From this order this appeal was taken. The defendant-appellee, The Ohio Fuel Gas Company, filed a motion to dismiss the appeal on the ground that the questions of law involved were moot. The motion was overruled and in its opinion **(Davies, etc., v Columbia Gas & Electric Corporation, 47 Abs. 225)** this Court on page 228 made the following observation:

"The action of the trial court in refusing to permit the filing of the amended petition is tantamount to holding that it is not good as against general demurrer."

The motion to dismiss the appeal did not raise the question now presented to this Court. However, we approve the statement quoted from this Court's opinion in that matter.

The filing of an amended petition after a demurrer has been sustained is controlled by §11365 GC, which provides as follows:

"If the demurrer be sustained, the adverse party may amend if the defect thus can be remedied, with or without costs as the Court directs. It shall be no objection to such amendment that it changes the action from law to equity, or vice versa, if its basis, essential facts, and final object remain the same."

Under the provisions of this section of the Code an amended petition cannot be filed as a matter of right but the trial court is required to exercise a sound discretion in permitting an amended petition to be filed. **Detroit Fidelity & Surety Co. v Keys, et al., 14 Abs 76, 85.**

In the instant case, the trial court in discussing the form of entry to be filed sustaining the demurrer to the original petition, stated:

"Plaintiff advances the claim that the petition can be so amended as to state facts sufficient to constitute a cause of action as a class suit.

"The Court has held that the action as pleaded is an attempt to bring in the form of a class suit separate causes of action for damages which is not proper, and no change in the pleadings can avoid this rule.

"If an equitable action can be maintained as counsel suggests it would be a departure and must be presented as a new action."

The statute (§11365 GC) expressly provides that an amended petition is not objectionable on the ground "that it changes the action from law to equity, or vice versa, if its basis, essential facts, and final object remain the same". If the plaintiff tenders an amended petition in good faith in which the defect in the original petition has been remedied and the "basis, essential facts, and final object remain the same", the trial court in the exercise of a sound discretion should permit the amended petition to be filed. In denying the plaintiff the right to remedy the defect by filing an amended petition, the Court in effect is denying the plaintiff his day in court. In the exercise of a sound discretion the trial court should grant to plaintiff an opportunity to properly state a cause of action.

We now consider more definitely the question of abuse of discretion. The defendants-appellees contend that the trial

court did not abuse its discretion in overruling the plaintiff's motion for leave to file amended petition. It is claimed that a reviewing court may not disturb the judgment of the trial court on the ground of abuse of discretion unless it finds that the action of the trial court was unreasonable, arbitrary, or unconscionable. Reference is made to **Vol. 31 O. Jur. Section 330, page 927,** wherein it is stated that motions for leave to amend pleadings are addressed to the sound discretion of the trial court. The case of **Steiner v Custer, 137 Oh St 448, 31 N. E. (2d) 855,** is cited, which holds:

"The meaning of the term 'abuse of discretion' in relation to the granting of a motion for a new trial connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court."

In that case the Court had under consideration the granting of a motion for a new trial. The Court on page 451 stated:

"The meaning of the term 'abuse of discretion' in relation to the present controversy connotes something more than an error of law or of judgment. Black's Law Dictionary (2 Ed.), 11. Such term has been defined as 'a view or action' that no conscientious judge, acting intelligently could honestly have taken." Long v George, 296 Mass., 574, 579, 7 N. E. (2d), 149, 151.

In **State v Ferranto, 112 Oh St 667, 148 N. E. 362,** where the test approved was not quite so severe, the court on page 676 stated:

"Was there an abuse of judicial discretion by the trial court (1) 'in discharging the jury and accepting a plea of guilty in the manner that it was done'; (2) 'and in finding the defendant guilty of murder in the first degree, without hearing testimony after the plea was entered'?

"What is judicial discretion? Bouvier's Law Dictionary gives this definition: 'Abuse of Discretion. A discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence'.

"The term is comprehensively defined in 18 Corpus Juris, p. 1135, as follows: 'This authority may be said, in a general way to be the power of the judge to rule and decide as his

best judgment and sound discretion dictate; and the term 'judicial discretion' or 'discretion of the court' is usually employed as designating the power mentioned. There are different kinds of discretion that may be exercised by the trial court, there is a discretion in the right to decide as the court please, or in the decision of what is just and proper under the circumstances, or according to the judgment of the court; but in all cases courts must exercise a discretion in the sense of being discreet, circumspect, and prudent, and exercising cautious judgment. * * * However incapable of exact definition, it is clearly recognized that discretion is not absolutely without elements, conditions, or limitations. The term implies the absence of a hard and fast rule, yet it should not be another word for 'arbitrary will', 'inconsiderate action', or 'unstable caprice'."

In Buckeye Co. v Caldwell, 18 O. C. C. (N. S.) 429, the Court on page 432 held:

"Of course motions for leave to amend are addressed to the sound discretion of the court, but in this case the application for leave presented a perfectly good answer, and his attorney, an officer of the court, represented that he expected to be able to sustain all its allegations by evidence. It would seem, then, to be a clear abuse of discretion to refuse leave to file such an amended pleading."

In Hanna v Hirschorn, 296 P. 891, (112 Cal. App. 438), the Court held:

"Where proposed amendment of pleadings will not radically change issues, delay case, nor prejudice adverse party, but will further justice, court is rarely justified in refusing leave to amend.

"Discretion to deny application to amend pleadings must be guided by fixed principles of law.

"Whether court has abused discretion in denying application to amend pleadings depends on whether amendment will perfect cause of action otherwise imperfectly pleaded."

In Euster v Standard Acc. Ins. Co., 10 A. (2d) 877, (139 Pa. St. 563), the Court on page 879 stated:

"Though a statement fails to set forth a good cause of action, yet if a plaintiff submits a self-sustaining amendment, the decision of the court based upon the original pleading does

not dispose of the plaintiff's claim and the amendment should be allowed. This is not a matter of discretion with the court below but a positive duty.

"* * * the trend in modern practice has been toward liberality of amendment of pleadings at any stage of the proceedings in the furtherance of a just disposition of the case on the merits."

A motion for leave to file an amended petition may be treated as a motion to strike or as a general demurrer. **Vol. 31 O. Jur. p. 854.**

In Detroit Fidelity & Surety Co. v Keys, et al., supra, this Court on page 85 of the opinion held:

"That in any event plaintiff in error was prejudiced by the action of the trial court in sustaining the motion to strike the amended petition from the files and entering judgment against the Surety Company because the Surety Company was thereby denied its right, if desired, within the discretion of the court, to file a second amended intervening petition."

In Hayes v Peavey, 86 Pac. 170, (43 Wash. 163) on page 171 the Court stated:

"The motion to strike was sustained. The plaintiff stood upon his amended complaint, and judgment was entered dismissing the action with prejudice to any further or other litigation. From such judgment this appeal was taken. * * *

"The motion to strike upon the ground alleged therein was equivalent to a demurrer to amended complaint, and the order granting the motion was in effect the sustaining of a demurrer. * * *

"Finding that the amended complaint stated a cause of action, we hold that it was error to strike it."

In **Vol. 31 O. Jur. p. 929,** it is stated:

"If the applicant for leave to amend presents a good pleading, and his attorney an officer of the court, represents that he expects to be able to sustain all its allegations by evidence, it would seem, then, to be a clear abuse of discretion to refuse leave to file such an amended pleading. Such professional statements by reputable attorneys have always been received by the courts as sufficient evidence of good faith, and as warranting the granting of leave to become a party to a suit and to file or amend pleadings."

It may be conceded that where a controversy involves a factual situation a reviewing court will seldom disturb the judgment of the trial court; in such case the reviewing court does not have the same opportunity of determining the merits of the controversy as is given to the trial court. However, where the trial court is required to exercise its discretion as to whether a defect in the petition has been remedied by a tendered amended petition the discretion to be exercised is somewhat limited and the reviewing court is in as good a position as the trial court to determine the legal question propounded. The rule is aptly stated in Weeks v Bareco Oil Co. 125 Fed. (2d) 84, (C. C. A. 7th), at page 93 as follows:

"* * * In most instances, we may say, generally, that the question of discretion is the display of sound judgment. In the proper case it may not be disturbed by an appellate court except for abuse. But what is abuse?

"Determination of abuse of discretion involves the exercise, by us, of sound judgment upon the facts. If there is controversy as to facts, and if the facts themselves largely define the wisdom of the discretion, review by the appellate court is seldom effective and it should not be. Then appellate court's review does not include trial court's discretion.

"If, however, the facts are not in dispute and it is a question of sound judgment based upon the undisputed facts which are before us as fully as before the trial judge (i. e., by affidavits) we are in about as good a position as he to say whether the discretion has been wisely exercised. In short both trial and appellate courts have the same situation upon which to exercise the same sound judgment."

In Ryan v Chatz, 125 Fed. (2d) 396, (C. C. A. 7th), the Court approved and followed the ruling in Weeks v Bareco Oil Co., supra.

We consider briefly the allegations in the tendered amended petition. It clearly appears from the allegations in the amended petition that all natural gas consumers were defrauded in the same manner by the single act of the defendants which was designed to defraud all such consumers in a similar manner, at the same time and in direct proportion to the amount of gas consumed; that such gas consumers are very numerous and it would be impracticable to bring them all before the court; that the questions involved are of a common or general interest to all such consumers; that the plaintiff is fairly representative of the class of consumers which he seeks to represent; that a multiplicity of suits is threatened

and that this action will avoid a multiplicity of suits. Plaintiff pleads facts which will require an accounting, which is requested. Plaintiff alleges that defendant corporations have in their possession large sums of money derived from overcharges made on gas consumers on which the plaintiff seeks to impress a trust. First and foremost, the plaintiff seeks injunctive relief, both temporary and permanent, against the continued unlawful overcharge. In the original petition there was no allegation that a multiplicity of suits was threatened; the facts pleaded which justify injunctive relief are more fully pleaded in the amended petition; neither did plaintiffs attempt to impress a trust on assets of defendant corporations. It is apparent from an examination of the amended petition that the right to damages depends on the right to injunctive relief. Plaintiff alleges that there is no adequate remedy at law. That the legal remedy afforded is inadequate is manifest.

An action for redress of the wrong committed because of illegal charges may be maintained without resorting to an administrative proceeding before the Public Utilities Commission. Injunctive relief may be granted. **Maxwell v Ohio Fuel Gas Co., 61 Oh Ap 400; City of Defiance v Toledo Edison Co., 47 Oh Ap 100; Oetjen v Kirby Co., 38 Abs 117, 121, 49 N. E. (2d) 95; Gorham Bros. Co. v Ann Arbor R. Co., 200 N. W. (Mich.) 287; So. Ry. Co. in Ky. v Frankfort Distillery, 233 Ky. 771, 27 S. W. (2d) 1025; National Gas Co. of W. Va. v Sommerville, 166 S. E. (W. Va.) 852; Kovorsky v Brooklyn Union Gas Co., 279 N. Y. 304, 18 N. E. (2d) 287.**

The avoidance of a multiplicity of suits is one of the dominant reasons for granting injunctive relief. An injunction may issue even where there is a legal remedy, if such remedy involves a multiplicity of suits. **21 O. Jur. 1015, 1031.**

If injunction is primary relief sought, the case is one in equity, even though substantial damages are sought.

The prosecution of class suits is permitted under §11257 GC which provides:

"When the question is one of a common or general interest of many persons, or the parties are very numerous, and is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

No distinction is made in the statute between law and equity or tort and contract cases. Therefore, it applies to all such suits if "the question is one of a common or general interest of many persons". It is not essential that the members.

of the class be united in interest. The interest with which ▌ the representative statute deals is a "common", as opposed to a "united" interest. It is sufficient if there is a common interest in the question of law involved, or in the question of fact to be tried. See **Stevens v Times-Star, 72 Oh St 112-154.**

The action set out in the amended petition presents a question which is "one of common and general interest" to all gas consumers for whom plaintiff seeks redress.

In **Haggerty v Squire, Supt., 137 Oh St 207, 28 N. E. (2d) 554,** the Court on page 220 held:

"* * * **Class suits are allowed where the parties are numerous or have a common interest or both.** Where a number of persons have separate and individual rights of action against the same party but all such **rights of action arise from a common source and represent a like interest,** the whole matter may be litigated in a single suit brought by all claimants as co-plaintiffs, **or, in case the parties are numerous making it impracticable to bring them all before the court,** by one or more of them suing for himself or themselves and on behalf of the others." (Emphasis ours.)

In **Smith v Kroeger, Supt., 138 Oh St 508, 37 N. E. (2d) 45,** the Court followed Haggerty v Squire, Supt., supra, and held:

"Under §11257 GC, when the question is one of common or general interest of many persons, or the parties are very numerous, and it is impracticable to bring them all before the court, one or more may sue for the benefit of all." (Emphasis ours.)

In **Wheatley v A. I. Root Co., 147 Oh St 127, 69 N. E. (2d) 187,** where it appears that the persons on whose behalf suit was instituted were divided into several classes, and that different claims and defenses would be involved, the Court approved and followed the case of Haggerty v Squire, supra, and permitted a class suit to be brought.

In Bailey v Tillinghast, 99 Fed. 801, (C. C. A. 6th Circuit), the Court held:

"To authorize plaintiff to maintain a suit in equity against a number of persons, it is not essential that there should be a community of interest between them; but where a common question of law arising upon similar facts is involved between the plaintiff and each defendant, equity has jurisdiction on the ground of preventing a multiplicity of suits."

In **Volume 16 O. Jur. Section 33, page 87,** the text is as follows:

"The problem as to whether, in any of the cases discussed in the last two paragraphs, the common element must consist of a common contract or property right, or whether it need consist only of a community of questions of fact and law, much discussed in some jurisdictions, does not seem to have been greatly considered in Ohio. However, the intimations of some of the decisions, and the implications of the Code of Civil Procedure, are in the direction of the more liberal rule."

It is urged that actions of a legal, rather than of an equitable, nature cannot be brought as a class suit under §11257 GC. In **Volume 30 O. Jur. page 741,** it is stated that the provision authorizing representative suits applies to actions of a legal as well as those of an equitable nature. In **Platt, etc., v Colvin, et al., 50 Oh St 703, 36 N. E. 735,** the first syllabus is as follows:

"Section 5008 of the Revised Statutes, which provides that **when the parties are very numerous and it is impracticable to bring them all before the court,** one or more may sue for the benefit of all, **applies to actions of a legal, as well as to those of an equitable nature.**" (Emphasis ours.)

Section 5008 of the Revised Statutes is now §11257 GC. While the character of the action is different the Court laid down a principle of law which is applicable to the issues in the instant case. The Court on page 711 held:

"It is argued by counsel for the defendant in error, that the provisions of Section 5008, permitting one or more to sue or defend for the benefit of all, **when the question is one of a common or general interest of many persons,** or **when the parties are very numerous and it is impracticable to bring them all before the court, apply only to actions of an equitable nature,** because, before the code, that manner of proceeding was allowed only in suits in equity. If that were a sufficient reason for restricting the provisions of that section to such actions, the same reason would make it necessary to so restrict the general requirement of the code that the plaintiffs must be the real parties in interest; and all must join who are united in interest; for that, as we have seen, was the general rule in equity, and not applicable to many actions at law; and so, with respect to the rule adopted by the code, requiring the petition

to state the facts constituting the cause of action, and others of its provisions. Indeed, the mode of procedure in the civil action is, in most respects, taken from, or assimilated to, that which prevailed in suits in chancery. One object of the code in abolishing the distinction between actions at law and suits in equity, and prescribing the same method of procedure for the prosecution of both, evidently was to simplify judicial proceedings, and facilitate the administration of justice; and to accomplish that end, its provisions, and proceedings under them, should receive that liberal construction which it is expressly required shall be given them. **To restrain the application of section 5008, to actions of a purely equitable nature, would, we think, be at a variance with its language, and the general spirit and purpose of the code."** (Emphasis ours.)

In **Blair v Newbegin, et al., 65 Oh St 425, 63 N. E. 1040,** the Court discussed at length the proposition that the jurisdiction of a court of equity may be invoked to avoid a multiplicity of suits and that a class action may be maintained even though the claims of the parties are separate and of a legal character. The Court quoted with approval from Pomeroy's Equity Jurisprudence, the language being slightly different in the Fifth Edition. The Court on page 436 quotes as follows:

"Much learning on the subject is epitomized by Professor Pomeroy in his work on equity jurisprudence. We quote section 181: 'Where numerous actions at law are brought, or are about to be brought, either by the same or different parties, all involving and requiring the decision of the same questions of law or of fact, so that the determination of one would not likely affect the others, a court of equity may, in order to do full justice to the litigants and to avoid great expense take cognizance and adjudicate upon all the rights and confer all the remedies in one suit, **although both the primary rights and the final reliefs are legal.** This instance of the concurrent jurisdiction plainly rests upon the arbitrary, unyielding and insufficient modes of procedure in actions at law, and in the ample power of the equitable procedure to adopt its judicial processes and its final reliefs to the circumstances of each case, by bringing in all these parties by means of one suit and decree'. Again, section 243: '**The multiplicity of suits to be avoided, which are generally actions at law, shows that the legal remedies are inadequate,** and they cannot meet the needs of justice; and therefore a court of equity interferes, and **although the primary rights and interests of the parties are legal in their nature, it takes cognizance of them, and awards**

some specific equitable remedy, which gives, perhaps, in one proceeding more substantial relief than could be obtained in numerous actions at law'. Section 245: 'Where the same party has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all adverse claimants as co-defendants. It should be observed in this connection that the prevention of a multiplicity of suits as a ground for the equity jurisdiction does not mean the complete and absolute interdiction or prevention of any litigation concerning the matters in dispute, but the substitution of one equitable suit in place of the other kinds of judicial proceeding, by means of which the entire controversy may be finally decided'. Also section 269: 'The weight of authority is simply overwhelming that the jurisdiction may and should be exercised either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, **although there is no common title nor community of rights or of interest in the subject matter,** among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body." (Emphasis ours.)

In **Pyper v Mutual Home and Savings Association, 12 O. O. 280, 27 Abs 97, 35 N. E. (2d) 736,** (decision by the Court of Appeals of Montgomery County), Judge Barnes writing the opinion on page 285 stated:

"Originally class suits were confined to actions in equity. Later they had been held to apply in actions at law under certain conditions."

In Pomeroy's Equity Jurisprudence, Fifth Edition, there appears an extended discussion of this matter in Volume 1 beginning on page 461. The author states that a court of equity will intervene to prevent a multiplicity of suits though the actions be of a purely legal character. On page 462 it is stated:

"In fact, the 'multiplicity of suits' which is to be prevented constitute the very inadequacy of legal methods and remedies

which calls the concurrent jurisdiction into being under such circumstances, and authorizes it to adjudicate upon purely legal rights, and confer purely legal reliefs."

Again on page 463 it is stated:

"The multiplicity of suits to be avoided, which are generally actions at law, shows that the legal remedies are inadequate, and cannot meet the ends of justice, and therefore a court of equity interferes, and although the primary rights and interests of the parties are legal in their nature, it takes cognizance of them, and awards some specific equitable remedy, which gives, perhaps in one proceeding, more substantial relief than could be obtained in numerous actions at law. This is the true theory of the doctrine in its application to the two jurisdictions."

Again on page 475, the author in discussing the proposition that the existing cause of action need not be equitable stated:

"It follows as a necessary consequence—and this point is one of great importance to an accurate conception of the whole doctrine—that the existing legal relief to which the plaintiff who invokes the aid of equity is already entitled need not be of the same kind as that which he demands and obtains from a court of equity; on the contrary, it may be, and often is, an entirely different species of remedy."

On page 510, Pomeroy begins a discussion of the principal question: What must be the character, the essential elements, and the external form of the common right, or interest held by the number of persons, in order that a court of equity may acquire or exercise jurisdiction for the purpose of preventing a multiplicity of suits, and may determine the rights of all and give complete relief by one decree? After discussing numerous cases in various jurisdictions in which different views of this matter have been taken, the author on page 598 states what he conceives to be the more liberal rule and the great weight of authority as follows:

"* * * Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is

simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or in behalf of a single party against such a numerous body, although there is no 'common title' nor 'community of right' or of 'interest in the subject matter', among these individiuals, but where there is and because there is merely a **community of interest among them in the questions of law and fact involved in the general controversy**, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body." (Emphasis ours.)

In the foot note the author refers to numerous cases among which is Blair v Newbegin, supra, and also quotes from **16 O. Jur. pages 87, 88,** which has been quoted above in support of what the author contends is the better and more liberal rule.
This question is discussed in Cornell Law Quarterly, Volume 19, page 433, under the general heading of "A Question of Common or General Interest of Many Persons", as follows:

"This phase of the law has caused more trouble than any other portion thereof and has led to all conceivable results. One cannot find any outstanding weight of authority as to its proper interpretation. The writer believes it should be given the broadest possible meaning. It is not difficult to decide what a 'common or general interest' means. It deals with an interest that is of universal concern within the limits of reference, that is, in this case a concern of all who represent and are represented. **The suggestion that 'common or general' means 'united' is incorrect,** for there are statutes making joinder mandatory where interests are united, whereas this legislation is not mandatory.
"* * * However in the statute relating to joinder of parties and actions and to counter claims the term 'subject of the action' is used, while in those dealing with representative suits it is not employed. **This indicates that the 'question' does not refer to the subject of the action. This being true, it is not essential that plaintiffs to a representative suit must be persons who can be joined under the ordinary joinder statute,** for such people must have an interest in the 'subject of the action'." (Emphasis ours.)

We are of the opinion that a compliance with the joinder statutes (§§11254, 11256 GC) is not required in order to maintain a class suit under the provisions of §11257 GC.

In the amended petition it is alleged that the claim of the plaintiff, John L. Davies, amounted to seventy dollars.

A class suit may be maintained, if the claims in the aggregate exceed the jurisdictional minimum even though the individual claims are less than the jurisdictional amount. Commonwealth v Scott, 112 Ky. 252, 65 S. W. 596; Gorley v Louisville, 65 S. W. (Ky.) 844.

We return to a consideration of the statute (§11257 GC) which permits a class suit to be brought. It is of importance to observe that the statute expressly provides that such suits may be instituted under either of two conditions: First, "when the question is one of a common or general interest of many persons" or, second, when "the parties are very numerous". If it "is impracticable to bring them all before the Court, one or more may sue or defend for the benefit of all". It is noted that the two provisions are used in the disjunctive. Both text writers and the courts ususally apply the test of "common or general interest" in determining whether a class suit may be maintained. Counsel in the instant case have approached this question from this angle. We are not required, and do not decide, whether under the express terms of the statute a class suit may be maintained on the sole ground that "the parties are very numerous", and it is "impracticable to bring them all before the court" without applying the "common or general interest" test. We rest our opinion on the conclusion that the "common or general interest" test has been met. Our courts have used language which indicates that a class suit may be maintained to avoid a multiplicity of suits, even though the "common or general interest" test is not applied. The first syllabus in Platt, etc., v. Colvin, et al., supra, quoted above supports this view. On page 708 of that opinion the court quotes with approval from Story's Equity Pleading to the effect that class suits fall into three categories, one of which is stated to be:

"Where the parties are very numerous, and although they have, or may have, separate, distinct interests; yet it is impracticable to bring them all before the court."

It is also interesting to note the language in Haggerty v Squire, Supt., supra, wherein the court on page 220 states:

"Class suits are allowed where the parties are numerous or have a common interest or both."

See also, Smith v Kroeger, Supt., supra, quoted above, in which the second syllabus states in the disjunctive the two

conditions under which class suits may be maintained. If this interpretation of the statute was not intended it needs legislative clarification.

The six separate assignments of error relate to the action of the trial court in overruling the motion of plaintiff-appellant for leave to file an amended petition and in dismissing the action. Further discussion of these assignments of error is not deemed necessary. Plaintiff-appellant has filed an application for leave to amend the assignments of error as follows:

"The Common Pleas Court erred in sustaining the demurrer to the original petition as a class suit."

Leave to amend the assignments of error will be granted although the question sought to be raised thereby could have been raised under the sixth assignment of error in which appellant claims the court "committed other errors manifest upon the face of the records".

Plaintiff contends that the original petition stated a good cause of action as a class suit and that the trial court erred in sustaining the demurrer thereto. The defendants urge that any error in the court's ruling sustaining the demurrer to the original petition was waived by plaintiff when he filed a motion for leave to file an amended petition, and that such error, if there be any, cannot be availed of upon this appeal. In support of this proposition defendants cite **Grimm v Modest, 135 Oh St 275, 20 N. E. (2d) 527**; **State, ex rel. v Moreland, 132 Oh St 71, 5 N. E. (2d) 159**; **Bingham v Nypano Rd. Co., 112 Oh St 115, 147 N. E. 1**; and **Smith v Ward, 32 Oh Ap 177.** An examination of these cases shows that the plaintiff filed an amended petition after a demurrer was sustained to the original petition. In the case at bar, an amended petition was not filed. Another case cited is **Coral Gables, Inc. v Garn, 23 Abs 162**, where a demurrer was sustained to the original petition and leave granted upon request to file an amended petition, which was never filed. The court refused to review an action of the trial court in sustaining the demurrer. The court on page 163 held:

"The appellant, therefore can not be prejudiced by the ruling upon the demurrer to the petition, for the reason that it expressed an intention and wish to abandon its rights under the pleadings, to which a demurrer had been sustained."

The plaintiff-appellant had the right to elect to rely upon his original petition and have judgment entered against them in order to present the matter to the reviewing court to determine whether the trial court was correct in sustaining the demurrer to the original petition. The plaintiff-appellant elected not to do so.

When a party can assign as error the ruling of the trial court refusing leave to file an amended petition he may not also assign as error the previous ruling sustaining a demurrer to the original petition. The filing of a motion for leave to file an amended petition shows an intention to abandon the original petition. When the plaintiff-appellant tendered for filing his amended petition all former pleadings were, as if they had not been filed, except for the purpose of comparison in order to determine whether the tendered amended petition remedied the defects in the original petition.

In Anthony v Slayden, 44 Colo. 144, 60 Pac. 826, the fifth syllabus is as follows:

"Where plaintiff, after a demurrer to his first amended complaint was sustained, tendered a second amended complaint, he could not afterwards assign error to the action of the court in sustaining the demurrer to the first complaint, though the court refused to allow the second amended complaint to be filed."

The court in discussing this question on page 828 held:

"**Another point appellant makes is that** the order overruling the demurrer to the first amended complaint is now open to review. While conceding the general rule to be that a party waives a ruling sustaining a demurrer to his pleading when he pleads over or amends, yet he says this has no application here, for he was not allowed to file a second amended complaint, and therefore got no benefit from his election. This reasoning is specious, but not sound. Indeed, unless we treat the tendering of the second amended complaint as an application for leave to amend, or as the act of presenting an amended pleading in pursuance of previous leave, plaintiff has no standing at all, for an order of court is a condition precedent of the right to amend. **By tendering for filing the second amended complaint, though it was refused, he manifested an intention to waive any error that may have been committed by the court in sustaining the demurrer to the first amended complaint, and waived the right to assign error thereto, just as clearly as though he had succeeded in procuring an order for its filing, and afterwards the court had stricken it from the files,**

or sustained a demurrer to it. It is not true, as claimed, that plaintiff Davies, etc. v Columbia Gas & Electric Corp. was cut off of a right to amend. The court did not decide that some kind of an amendment might not be made, but only that the second amended complaint tendered was not proper; and when a party can assign error either to a ruling refusing leave to file, or striking from the files an amended pleading, he may not also assign error to a previous ruling sustaining a demurrer to an earlier pleading which the amended one was intended to supplant. It would be manifestly unfair to permit this to be done." (Emphasis ours.)

It has been held that the rule that by pleading over a party waives the error, if any, applies not only where the party actually pleaded over, but also where he takes leave to plead over after a demurrer has been sustained. As the court stated in Berry v Barton, 12 Okla, 221, 71 Pac. 1074, 66 L. R. A. 513, it is the intention of the party, as indicated by his acts at the time, which fix his standing in court: The court on page 517 held:

"It is not necessary to decide in this case as to whether the second count in the answer stated a defense, for the reason that when the demurrer was sustained the defendants were granted leave to amend, and by taking leave to amend they waived the error, if any, in the sustaining of the demurrer. In order to take advantage of the ruling on a demurrer when it is sustained, the party must stand upon his pleading held to be defective, and not amend. While there are cases the other way, the great weight of authority supports this doctrine. (Numerous cases cited.)

"* * * But it is argued that in this case the defendants did not plead over, and therefore they are in a position to urge as error the sustaining of the demurrer. This position cannot be sustained. It is true that nearly all of the cases state that by pleading over after a demurrer has been sustained a party waives the error, if any has been committed by the court in such ruling. The rule not only applies where the party actually pleads over, but also where he takes leave to plead over after a demurrer has been sustained to his pleading. It is the intention of the party, as indicated by his acts at the time, which fixes his standing in court. By taking leave to amend, he thereby indicates his intention to abandon his former position and to draft his pleading upon a different theory, or to state his cause of action in different language. By taking leave to amend, he admits the insufficiency of the pleading, and he is bound by his own conduct, and cannot afterwards take advantage of it. Any other rule would per-

mit delays under the guise of a desire to submit to the ruling of the court and amend, when in fact the party had no intention of amending. Courts everywhere insist upon such rules of practice and conduct of parties litigant as will promote justice, and such as will not encourage or countenance deception. The attorney is supposed to know the law of his case, equally as well as the court, and inasmuch as the statute, with the permission of the court, allows a party, at his own election, to amend or stand on his pleading, it is only fair that he should make his election, and then be bound by it, and, if he elect to amend, he cannot afterwards, simply because his own views of the law may have changed, or further investigation convinced him that his former position was correct, urge error in a ruling which he had accepted as law. When he elects to amend he abandons, not necessarily his view of the law as urged against the demurrer, but that particular pleading, and it is just the same as though it had never been filed; and a party who expressly abandons a pleading cannot at his own election, without permission of the court, urge it as an existing pleading in the case." (Emphasis ours.)

See also, Clement v Dean, 51 S. C. 317, 28 S. E. 942.

While there is obiter dictum contra in Ohio, (**Bolser v Arnold, 73 Oh Ap 133**) we are of the opinion that the plaintiff-appellant in filing a motion for leave to file an amended petition showed an intention to abandon his original petition. For this reason the ruling of the trial court sustaining the demurrer to the original petition is not reviewable by this Court.

We have compared the tendered amended petition with the original petition to determine whether the defects were remedied, and have also determined whether the tendered amended petition was sufficient to constitute a class suit. We find the tendered amended petition contains material allegations not found in the original petition. We tested the sufficiency of the tendered amended petition on the motion for leave to file as on demurrer. We find the tendered amended petition to be good against general demurrer. We cannot thus test both petitions. Therefore, we do not pass on the sufficiency of the original petition.

Judgment is reversed and the cause remanded with instructions to sustain the motion of plaintiff-appellant for leave to file the tendered amended petition, and if a general demurrer is filed thereto, to overrule the same, and for other proceedings according to law.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.

394

## APPLICATION FOR REHEARING .

No. 3861.   Decided April 17, 1948.

By THE COURT.
Submitted on application for rehearing.  It is contended that under §549 GC, this Court does not have the power "to review, suspend or delay any order made by" the Public Utilities Commission. This action in no way disturbs an order made by the Commission.  It does not affect the rate-making authority of the Commission.
Our attention is called to a statement in our opinion on page 11 as follows:

"It is apparent from an examination of the amended petition that the right to damage depends on the right to injunctive relief."

We were there considering the equitable feature of the case.  When the opinion in its entirety is considered, it will become apparent that the Court did not base its judgment on this statement.  We concluded that the jurisdiction of the Court may be invoked and a class suit may be maintained though the action be of a purely legal character.
The application for rehearing will be denied.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.