RECKMAN, APPELLANT, *v.* KEITER ET AL., APPELLEES.

(No. 2498—Decided April 28, 1959.)

*Messrs. Zarka, Karas & Gammeter,* for appellant.
*Mr. Mathias H. Heck,* prosecuting attorney, and *Mr. William L. Falknor,* for appellee Bernard L. Keiter.

WISEMAN, P. J.   This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery County entered for the defendants on a directed verdict.

This is a civil action for damages filed against Bernard L. Keiter, Sheriff of Montgomery County, and the Ohio Casualty Insurance Company, as surety on the sheriff's official bond, for alleged failure of the sheriff's deputies to exercise ordinary care in investigating and reporting a highway automobile accident in which plaintiff was injured.

The cause was tried on the third amended petition and answers of the defendants.   The pertinent allegations in the third amended petition are as follows:   On July 21, 1955, two deputies, while on duty, were directed to investigate an automobile accident which occurred at 8:30 a. m. on state route No. 741 in Montgomery County, about ten miles south of the city of Dayton; that the deputies went to the scene of the accident; that plaintiff was a guest in the automobile owned and operated by Kenneth Blivin, which was involved in the accident; that the deputies, upon arriving at the scene, talked to all parties involved, but failed to identify the driver and owner of a tractor-trailer truck which was involved in the accident and which was stopped at the scene of the accident; that the deputies did talk to the unidentified driver of the tractor-trailer truck; that the deputies assured the plaintiff that all identification and information concerning the accident would be made available at the office of the sheriff; that the deputies did not make this information available, nor is such information available either at the sheriff's office, or the office of the Director of Highway Safety of the state of Ohio.   Plaintiff avers that she was injured in such accident and that, as a direct and proximate result of the aforementioned wanton negligence of the deputies,

the plaintiff has been denied her right of action to pursue the driver or owner of the tractor-trailer. Plaintiff avers that she was damaged in this, to wit: Said deputies failed to secure the identification of the driver and/or owner of the said tractor-trailer; the deputies, through their failure to investigate and failure to provide an identification of the driver and/or owner of the tractor-trailer, have prevented the plaintiff from pursuing her chose in action against said tortious party.

The sheriff and the bonding company filed answers, in which they admit that the sheriff's deputies investigated an accident and then deny generally all the other allegations in the third amended petition.

The cause was tried to a jury. On motions for directed verdict made at the close of the plaintiff's case, the court directed the jury to return a verdict for the defendants. Plaintiff's motion for new trial was overruled.

Plaintiff assigns four grounds of error: First, error in sustaining defendants' motion to strike certain averments from plaintiff's first amended petition; second, error in excluding testimony on, and the introduction of, accident reports; third, error in directing a verdict for the defendants; fourth, error in overruling a motion for new trial.

Under the first assignment of error, plaintiff contends that the trial court erred in sustaining part of defendants' motion to strike certain allegations from plaintiff's first amended petition. The stricken allegations were not incorporated in the third amended petition on which the parties went to trial. We are not required to pass on the propriety of the action of the trial court in striking this material from the first amended petition.

The plaintiff did not elect to stand on the ruling at that point and appeal from an order dismissing the action, but filed an amended petition, thus abandoning the former petition, and, as a consequence, waived any error committed in sustaining the motion to strike. The amended pleading superseded the original pleading. The plaintiff may not predicate error on such action of the trial court. *Grim* v. *Modest,* 135 Ohio St., 275, 20 N. E. (2d), 527; *Bingham* v. *Nypano Rd. Co.,* 112 Ohio St., 115, 119, 147 N. E., 1; *Sterling* v. *Hanley Motor Sales, Inc.,*

87 Ohio App., 362, 95 N. E. (2d), 273; *Starr, Admx.,* v. *Gebhart, Admr.,* 71 Ohio Law Abs., 33, 130 N. E. (2d), 358; *Herzig* v. *Hunkin Conkey Construction Co.,* 60 Ohio Law Abs., 313, 101 N. E. (2d), 255; *Davies* v. *Columbia Gas & Electric Corp.,* 51 Ohio Law Abs., 372, 79 N. E. (2d), 327.

Under the second assignment of error, plaintiff contends that the trial court erred in excluding from the evidence the accident report prepared by and in possession of the defendant Keiter. The trial court refused the admission of the report of the accident by virtue of the provisions of Section 5502.12, Revised Code, which provides that accident reports submitted pursuant to the preceding section to the state Director of Highways and state Director of Highway Safety "shall not be subject to subpoena or be used as evidence, for the impeachment of witnesses or otherwise, in any trial, civil or criminal, arising out of the accident." Without question, the trial arose out of the accident which was the subject of the report.

Apparently, the statute is intended to exclude from use as evidence the record of an accident submitted to the Director of Highways and Director of Highway Safety as provided for in the preceding Section (Section 5502.11, Revised Code). It does not appear in the record whether the report of the accident was forwarded to the state directors.

The report which plaintiff attempted to introduce was a report in the possession of the sheriff, which was on a form used in reporting accidents to the state directors. Whether this section is also applicable to a report in the possession of the sheriff, *quaere?*

Regardless of the state of the record respecting a demand to produce the record, we are of the opinion that plaintiff cannot be heard to complain inasmuch as he was permitted to cross-examine the sheriff in detail respecting the report; and, later, counsel for plaintiff was permitted to read into the record the entire report. Any error committed was completely cured. 4 Ohio Jurisprudence (2d), 132 and 134, Sections 901 and 902.

Under the third and fourth assignments of error, the plaintiff raises two questions: First, did the sheriff, acting through

his deputies owe any duty to the plaintiff, as an injured party, under Sections 5502.11 and 5502.12, Revised Code, to secure the name of the driver of the tractor-trailer? Second, in the absence of statutory law is the sheriff or deputy who performs an act or accepts the responsibility of performing an act for the benefit of another person charged with the duty to exercise ordinary care to prevent an injury to such other person under the common law of this state?

These two questions are interesting and novel, and we believe are of first impression in Ohio.

We first consider Sections 5502.01, 5502.11 and 5502.12, Revised Code.

Section 5502.01, Revised Code, provides:

"The Department of Highway Safety shall administer and enforce the laws relating to the registration, licensing, sale and operation of motor vehicles and the laws pertaining to the licensing of drivers of motor vehicles.

"The department shall compile, analyze, and publish statistics relative to motor vehicle accidents and the causes thereof, prepare and conduct educational programs for the purpose of promoting safety in the operation of motor vehicles on the highways, assist and encourage the operation of driver training instruction in the public schools and conduct research and studies for the purpose of promoting safety on the highways of this state."

Section 5502.11, Revised Code, provides:

"Every state highway patrolman, sheriff, deputy sheriff, police officer, or other law enforcement officer investigating a motor vehicle accident shall, within 5 days, forward a written report of such accident to the Director of Highways and a copy to the Director of Highway Safety on a form which the Director of Highways shall adopt subject to the provisions of Sections 119.01 to 119.13, inclusive, of the Revised Code."

Section 5502.12, Revised Code, provides:

"The accident reports submitted pursuant to the preceding section shall be for the use of the Director of Highways and the Director of Highway Safety for purposes of statistical, safety and other studies. The Director of Highways shall fur-

nish a copy of such report to any person claiming to have been injured or damaged in a motor vehicle accident, or to his attorney, upon the payment of a fee of one dollar.

"Motor vehicle accident reports submitted pursuant to the preceding section shall not be subject to subpoena or be used as evidence, for the impeachment of witnesses or otherwise, in any trial, civil or criminal, arising out of the accident."

These three sections constitute the entire chapter, 5502: Department of Highway Safety. These sections were enacted as new legislation by the 100th General Assembly in 1953.

Section 5502.01, Revised Code, was a part of Amended House Bill No. 243, the stated purpose being "to create a Department of Highway Safety," and became effective October 2, 1953. Sections 5502.11 and 5502.12, Revised Code, were embraced in Amended Substitute Senate Bill No. 230, the stated purpose being "to amend Sections 4509.04, 4509.07, and 4509.10 of the Revised Code and to require certain motor vehicle accident reports to be filed with the Director of Highways and the Director of Highway Safety," and became effective October 15, 1953. By this legislation a new state department was created, known as the "Department of Highway Safety." In an article found in 14 Ohio State Law Journal, 389, written by Charles E. Shanklin, a member of the Ohio bar, the author states the purpose of this legislation as follows:

"The legislative intent of this departmental revamping is two-fold, and can be concisely stated:

"1. To restrict the Department of Highways to the business of road construction and repairs;

"2. To combine all state highway regulatory functions into one department in an effort to educate the public about safety on the highways."

The author then discusses the new functions conferred on the Department of Highway Safety, as stated in Section 5502.01, Revised Code. Neither in the stated legislative purpose nor in the express provisions of the statute do we find any legislative intent to impose any additional burdens or duties on the sheriff with respect to his conduct toward a party involved in an automobile highway accident. The accident report is required to be furnished to the state directors to enable them to better per-

form their duties and functions prescribed in the act. Section 5502.12, Revised Code, expressly provides:

"The accident reports submitted pursuant to the preceding section shall be for the use of the Director of Highways and the Director of Highway Safety *for purposes of statistical, safety and other studies.*" (Emphasis ours.)

This provision of the statute refutes the claim of the plaintiff that the accident reports are for the benefit of the party injured, and that the sheriff is liable in damages to the person injured if he fails to make a complete report of an automobile accident.

The claim of the plaintiff is adverse to a sound public policy. To what limit would the sheriff be required to go in gathering evidence? Would he be required to gather evidence for all the parties injured? If the sheriff should fail to obtain one important fact vital to the successful prosecution of a damage suit, would he be liable in damages? This would be the effect of plaintiff's contention when it is carried to a logical conclusion.

Neither of the sections cited, nor any other section of the Code, imposes a duty on the sheriff to investigate any and all accidents. The statutory provisions recognize the realities of the situation. Under the section cited above, if the sheriff does conduct an investigation of any given highway accident, he is required to forward a report to the state directors.

We find no legal duty owing to the plaintiff which the sheriff has breached; without a breach of legal duty there can be no liability. 29 Ohio Jurisprudence, 394, Section 17.

The sheriff is the chief law enforcement officer of the county. As such law enforcement officer, the sheriff investigates highway accidents in order to determine whether a criminal offense has been committed. The performance of this duty and the proper discharge of this function do not convert the sheriff or his office into an agency for the purpose of gathering information for the benefit of the parties injured in the prosecution of claims for civil damages.

We conclude that under the sections of the Code above cited the fact that the accident report on file in the sheriff's office did not contain the name of the driver or owner of the

tractor-trailer, the alleged tort-feasor, does not render the sheriff liable in damages on the ground that the plaintiff has been denied the opportunity to prosecute her claim for damages against the alleged tort-feasor.

We now consider the second question: Is the sheriff liable at common law? A concise statement of the factual development is necessary. The evidence presented was much broader than the pleadings. The third amended petition did not allege the presence of the two trucks on the highway, or any act of negligence on the part of the driver of the tractor-trailer, the alleged tort-feasor. We fail to see how plaintiff can maintain an action against the sheriff without alleging an act of negligence against the driver of the tractor-trailer which proximately caused plaintiff's injuries. Plaintiff never moved to amend the pleadings. However, in the absence of such allegation much evidence was presented by plaintiff, without objection, relative to the facts and circumstances surrounding the accident and the conduct of the sheriff's deputies.

The essential facts are as follows: Plaintiff was a passenger in an automobile driven by Kenneth Blivin; the road was a two-lane highway; as said automobile approached the brow of a hill, Blivin observed two trucks approaching from the opposite direction; the tractor-trailer was attempting to pass another truck; that the tractor-trailer was being operated on its left side of the highway, and in the lane of travel of the automobile driven by Blivin; and that in order to avoid a collision with the truck, Blivin swerved to the right and went off the highway into a ditch and struck a pole. Plaintiff was severely injured, was bleeding profusely, and was carried into a nearby residence; Blivin was also injured and bleeding about the face; an ambulance was called; about ten minutes after the accident occurred, two of the sheriff's deputies arrived, and they immediately gave attention to the persons injured and suggested they be taken to a hospital. The deputies conversed with the persons involved respecting the cause of the accident. One of the deputies had a form on which he made notations concerning the accident. When the ambulance arrived, plaintiff was placed in it and it immediately left for the hospital. There not being sufficient room in the ambulance for Blivin, one of the deputies,

observing that he was still bleeding, stated to him: "We better take you to the hospital." Blivin testified that as he approached the sheriff's car he said to the deputies, "I want to get the name of the truck driver, the license number, and the trucking company that he was working for—of the man that ran us off the road," to which one of the deputies answered, "No, don't worry about that, I will have all that in my record. I will have all that information and it will be available at the sheriff's office. The important thing is to get you to the hospital right now. We don't know how badly you are hurt." Thereupon Blivin got into the sheriff's car and the deputies took him to the hospital.

The record shows that the pad or form used by the deputies for a report of the accident was left with the drivers of the two trucks, who were instructed to fill it out and give it to the wrecking crew that came to remove Blivin's automobile. Although diligent effort was made to find the pad and report, it was never located. It does not clearly appear in the record whether a report of the accident was ever forwarded to the Director of Highways or the Director of Highway Safety. The report of the accident on file in the sheriff's office was on a form which the sheriff's office had adopted, the state directors never having prescribed a form. The report in the sheriff's office did not state the name of the driver or owner of the tractor-trailer.

Do these facts present a case of common-law liability? We do not think so. It will be observed that the statement made by the deputy to the effect that the name of the driver of the tractor-trailer would be in his report and that such information would be available in the sheriff's office was never made to the plaintiff. At the time the statement was made the plaintiff was in the ambulance and was on the way to the hospital. There is nothing in the record to show that Blivin was acting as agent for the plaintiff or under instructions from her. If the sheriff furnished Blivin the name of the driver of the tractor-trailer, he would be under no obligation to disclose such information to the plaintiff. Moreover, there is nothing in the record to show that the plaintiff acted or relied on the statement of the deputy. The question whether the sheriff, because of the statement of the deputy, owed a duty to Blivin, is not before us.

A benefit accruing to Blivin, if any, would not inure to the benefit of the plaintiff. In 38 American Jurisprudence, 660, Section 18, the rule is stated as follows:

"* * * The decisions are substantially unanimous to the effect that it is not sufficient to show that the defendant owed to another person or class of persons a duty which, had it been performed, would have prevented the injury of which complaint is made by the plaintiff. This rule applies whether the duty is one imposed by the general principles of the common law or one imposed by statute. * * *"

In *Hamilton* v. *Minneapolis Desk-Manufacturing Co.*, 78 Minn., 3, 80 N. W., 693, 79 Am. St. Rep., 350, the third paragraph of the syllabus is as follows:

"In an action for neglect of duty, it is not enough for the plaintiff to show that the defendant neglected a duty imposed upon him by statute for the benefit of somebody else, and that such person would not have been injured if the duty had been performed, but he, must also show that the duty was imposed for his benefit or was one which the defendant owed him for his protection."

In *Karr* v. *Chicago, Rock Island & Pacific Ry. Co.*, 341 Mo., 536, 108 S. W. (2d), 44, the second paragraph of the syllabus is, in part, as follows:

"There can be no actionable negligence in the absence of some duty which has been neglected or violated * * *.

"It is not sufficient for complainant to show that he has been injured by the failure of another to perform a duty or obligation unless that duty or obligation was one owing to complainant; nor is it sufficient to show that defendant owed to another person or class of persons a duty which had it been performed would have prevented the injury complained of.

"To be actionable negligence the injury complained of must result from the violation of a legal duty owed by defendant to the injured person."

Inasmuch as the statement of the deputy did not inure to the benefit of the plaintiff, this court very properly could hold that the rights of the plaintiff should be considered on the basis of there not having been a statement made by the deputy. In the application of the principle of law above quoted from

American Jurisprudence, the statement of the deputy in no way strengthens the plaintiff's case.

As hereinbefore stated, we know of no principle of common law which required the sheriff or his deputies, under the circumstances, to secure the name of the alleged tort-feasor for the benefit of the plaintiff in the prosecution of a civil action for damages. The sheriff's office is not a detective agency to gather information for the benefit of injured persons in the prosecution of civil actions for damages.

However, the plaintiff contends that when a person promises to perform an act for another gratuitously, such person is required to exercise ordinary care in the performance of said act; that such person is liable in damages for any injury caused by the failure to exercise ordinary care. The rule is stated in 65 Corpus Juris Secundum, 343, Section 4 (b), as follows:

"One who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking was purely voluntary or gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon."

See, also, 38 American Jurisprudence, 659, Section 17.

An examination of the cases cited in support of the text in Corpus Juris Secundum leads this court to conclude that the rule stated has little or no application here. Moreover, in Ohio the liability of the sheriff is controlled by statute.

We come now to a consideration of the statutory provisions related to the liability of the sheriff for acts of his deputies. In Chapter 3: Officers; Oaths; Bonds, is found Section 3.06, Revised Code, which, in part, provides:

"A deputy, when duly qualified, may perform any duties of his principal. * * * The principal is answerable for the neglect or misconduct in office of his deputy or clerk."

In Chapter 311: Sheriff, is found Section 311.05, Revised Code, which provides:

"The sheriff shall be responsible for the neglect of duty or misconduct in office of each of his deputies."

Section 3.06, Revised Code, was formerly Section 9 of the

General Code, and prior thereto, Sections 9 and 10 of the Revised Statutes of 1880. Section 311.05, Revised Code, was formerly Section 2831 of the General Code, and prior thereto, Section 1210 of the Revised Statutes, and prior to the Revised Statutes, Sections IV and V of Chapter 35 of Swan and Critchfield, 1860. The provisions are found in 29 Ohio Laws, 410 (February 17, 1831). Consequently, these provisions of the Code are not recent, but have been a part of the statutory law of this state for many decades.

Section 311.05, Revised Code, provides that the sheriff shall be responsible "for the neglect of duty" and for the "misconduct in office" of his deputies. We have hereinbefore ruled that there was no legal duty owed to the plaintiff under the factual developments in this case. Therefore, there cannot be any "neglect of duty" for which the sheriff is held responsible. Do the facts show a "misconduct in office" within the meaning of Section 311.05, Revised Code? We do not think so.

We turn now to a consideration of the case law relating to these sections of the Code.

In *State, ex rel. Geyer,* v. *Griffin, Aud.,* 80 Ohio App., 447, at page 455, 76 N. E. (2d), 294, and in *State* v. *Harland,* 94 Ohio App., 293, at page 296, 112 N. E. (2d), 682, it is stated that Section 2831, General Code (now Section 311.05, Revised Code), contains merely restatements of the common law covering the civil liability of the sheriff for the acts of his deputies.

In determining the liability of a public official for acts of his deputies, no distinction is drawn between acts done *virtute officii* and acts done *colore officii,* and it makes no difference whether the act done is classified as nonfeasance, misfeasance or malfeasance. *Rischer* v. *Meehan,* 11 C. C., 403, 5 C. D., 416; *American Guaranty Co.* v. *McNiece,* 111 Ohio St., 532, 146 N. E., 77, 39 A. L. R., 1289; *United States Fidelity & Guaranty Co.* v. *Samuels,* 116 Ohio St., 586, 157 N. E., 325, 53 A. L. R., 36.

In 32 Ohio Jurisprudence, 965, Section 107, it is stated:

"Nonfeasance is defined as an omission to perform a required duty at all, or a total neglect of duty.

"Misfeasance has been defined as a default in an officer in not doing a lawful act in a proper manner, omitting to do as

it should have been done; as 'improper doing of an act which a person might lawfully do' * * *.

"Malfeasance is the doing of an act wholly unlawful and wrongful."

The act of the deputy of which plaintiff complains was an act of nonfeasance which is associated with the omission to perform a legal duty. Moreover, to recover for the negligent act of a public official it must be shown that such officer negligently failed to perform a legal duty. 32 Ohio Jurisprudence, 966, Section 108. We reiterate that the sheriff owed no legal duty to the plaintiff, either at common law or under the statute, to make an investigation, to make a report of the accident, or to secure information relative to the identity of the tort-feasor. Had the sheriff made no investigation of the accident at all, which the law does not enjoin, would the sheriff be liable? Assuredly not. Had the sheriff made an investigation, but made no report whatever, would the sheriff be liable? We think he would not, as a report is not for the plaintiff's benefit. Had the sheriff made an investigation, but arrived on the scene after the alleged tort-feasor had left the scene, and for that reason the sheriff did not learn of the identity of the tort-feasor, would the sheriff be liable? We think he would not.

The fact that the deputy made a statement relative to the contents of the report does not strengthen plaintiff's case. The statement of the deputy was not a promise to do an act in addition to, or outside, his legal duty, but rather in connection with his function as the chief law enforcement officer of the county. As chief law enforcement officer of the county it is the function of the sheriff to investigate highway accidents to determine whether a criminal offense has been committed. The deputy was discharging this function at the time the statement was made. The sheriff determined that no criminal offense had been committed. In making such determination, the sheriff was required to exercise discretion. It is a well established principle of law that a public officer cannot be held accountable for any act while performing a function which requires the exercise of discretion. 32 Ohio Jurisprudence, 961 and 964, Sections 102 and 105; 80 Corpus Juris Secundum, 228, Section 52. Whether

the deputy who made the statement to Blivin is personally liable to Blivin, *quaere?*

This case has many legal facets which have not been discussed by counsel or by the court. Because of our ruling on the principal questions presented, we do not reach, and therefore do not decide or discuss questions as to the proper measure of damages, the speculative nature of plaintiff's damages, or whether in fact she would have prevailed had she sued the alleged tortfeasor.

In our opinion, the plaintiff failed to show a right of action, either under the statute or at common law. The trial court properly directed a verdict for the defendants. We find no assignments of error well made.

*Judgment affirmed.*

Kerns, J., concurs.

Crawford, J., concurs in judgment.