EPLING, APPELLEE, *v.* CARDARELLI, SHERIFF, APPELLANT.

(No. 10976—Decided October 19, 1983.)

*Mr. Peter D. Oldham* and *Mr. Andrew R. Duff,* for appellee.
*Mr. Charles Lowrey,* for appellant.

GEORGE, J. Susan K. Epling commenced this action in the court of common pleas against Sheriff Anthony Cardarelli. Epling sought to recover damages for injuries she sustained as a result of a shooting incident on February 19, 1978.

On Thursday, February 16, 1978, George Loveless was transported to Fallsview Psychiatric Hospital under a probate court order of detention based upon an affidavit filed by his wife, Nancy. At the time of the transport from his home to the hospital, Loveless drew a revolver and threatened the officers. He was disarmed after a minor scuffle. Loveless was to be held in Fallsview for a minimum of forty-eight hours, but forced his way out on Friday evening.

Nancy learned of Loveless' escape on Friday evening and took her children to a motel in Akron. On Saturday, Nancy telephoned Epling and Adolph "Tiny" Tekautz who were friends of the Lovelesses and told them of the escape. Nancy then spent Saturday evening in a Canton motel.

On Sunday, February 19, 1978, Nancy telephoned the Summit County Sheriff's office concerning her husband's escape. Lt. Chevrier, co-ordinator of the special operations squad which was investigating the escape, met with Nancy that afternoon in Canton. He was apprised of Loveless' extensive gun collection, his machine gun dealership and the threats which had been made against Nancy. Lt. Chevrier accompanied Nancy to her home in Hartville in an effort to remove any weapons still there. He then returned to Canton with Nancy and her two children.

Nancy telephoned Epling seeking assistance in locating Loveless. Nancy and her children went to the Epling residence followed by Lt. Chevrier. They arrived at the house at about 4:30 p.m. on Sunday. During the course of the conversation with Lt. Chevrier, both Nancy and Epling expressed fear and concern for their safety.

Epling alleges that Lt. Chevrier assured Nancy and her that Loveless would not come to the house and that Chevrier's office had him under its thumb. Epling further alleges that Lt. Chevrier assured her that she would be protected and she relied on his assurances.

After making a series of telephone calls, Lt. Chevrier left the Epling residence at about 5:30 p.m. with Nancy and the children remaining to spend the night. Within fifteen minutes, there was a knock on the front door. Nancy, the children and Epling ran into a bedroom. Tiny, who was also at the Epling residence, looked out the picture window to see who was at the door. There was a spray of machine gun fire and Tiny was killed.

Loveless entered the house through the picture window armed with a M-16 automatic rifle, a Mark 10, 9mm submachine gun, a holstered military Colt .45 and a Smith & Wesson Chief's .38 in his jacket pocket. He continued to shoot as he proceeded toward the bedroom. During the course of the spree, Epling suffered a series of wounds to her leg. The shooting ended when Loveless' teen-aged son got a gun from the closet and fired and wounded his father. As his father tried to reach for a gun, the son picked up the M-16 rifle and shot and killed Loveless.

Epling filed an action against the sheriff claiming negligence in the apprehension of Loveless and neglect in pro-

viding for her protection, and thereafter apparently proceeded upon the theory that the sheriff owed her a special duty and was answerable in damages. The case was tried to a jury which returned a verdict in favor of Epling in the amount of $100,000. The sheriff now presents four assignments of error.

"I. The trial court erred in overruling defendant's motion for summary judgment since plaintiff's complaint failed to state a claim upon which relief could be granted.

"II. The trial court erred in granting plaintiff's Ohio R. Civ. Proc. 39(B) motion to have the case tried before a jury just two days before trial.

"III. The trial court erred in permitting plaintiff, during redirect examination, to testify regarding statements made by her in a deposition prior to trial which were consistent with her testimony at trial.

"IV. The jury's finding of negligence against defendant was against the manifest weight of the evidence."

The sheriff's motion for summary judgment alleged that Epling failed to state a claim upon which relief could be granted. Specifically, the sheriff alleged there was no duty owed by him to Epling. The trial court denied the motion on the day of trial.

Civ. R. 56(C) provides, in part:

"* * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

In reviewing the trial court's denial of the motion for summary judgment, this court must determine whether, as a matter of law, there was a genuine issue of any material fact. The trial court was presented with the pleadings and the af-fidavit of Epling. The burden was upon the sheriff, as the moving party, to demonstrate that no genuine issue existed as to any material fact.

The sheriff contended that Epling failed to state facts which would give rise to a duty owed to her by him. Upon a review of the original pleadings and the affidavit of Epling filed in opposition to the motion for summary judgment this court finds that plaintiff's allegations were only demonstrative of a cause of action for the neglect of duty to protect.

Neither the pleadings nor Epling's affidavit established any facts which show the existence of any special relationship between Epling and the deputy sheriff, Lt. Chevrier. It appears, however, that Epling intended to allege the existence of a special relationship giving rise to a legal duty on the part of the sheriff, through the acts of Lt. Chevrier, to protect Epling. This court, however, is unable to find any precedent in Ohio for the adoption of the theory of a special duty owed by a law enforcement officer to an individual. See *Reckman* v. *Keiter* (1959), 109 Ohio App. 81 [10 O.O.2d 252]. See, contra, *Massengill* v. *Yuma County* (1969), 104 Ariz. 518, 456 P. 2d 376; *Doe* v. *Hendricks* (1979), 92 N. M. 499, 590 P. 2d 647; *Estate of Tanasijevich* v. *Hammond* (Ind. App. 1978), 383 N.E. 2d 1081; *Porter* v. *Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E. 2d 610; and *Hendrix* v. *Topeka* (1982), 231 Kan. 113, 643 P. 2d 129. Other jurisdictions have adopted the view that the creation of a special relationship (*i.e.,* informants, special or immunity witnesses) concomitantly raises a specific duty to a particular person. Even assuming Ohio would follow suit, the evidence in this case demonstrates Epling was never removed from membership within the public at large.

It is noted that the sheriff moved the court for a directed verdict at the close of Epling's case based upon a lack of duty to Epling. However, the denial of the sheriff's motion was not assigned as er-

ror. This court cannot find that such denial amounted to plain error and therefore any error regarding the directed verdict was waived.

This court finds that the sheriff was entitled to summary judgment as a matter of law since no duty was owed to Epling by the sheriff. Thus, the sheriff's motion for summary judgment should have been granted. This court believes the adoption of a new rule of law, as urged by Epling, involves questions of public policy which should only be decided by the Supreme Court since the legislature has failed to act. Accordingly, the judgment is reversed and judgment is entered in favor of the sheriff.

In light of our disposition of Assignment of Error No. I, this court finds the remaining assignments of error are moot. Accordingly, the judgment is reversed and vacated and judgment is entered in favor of the sheriff.

*Judgment reversed.*

MAHONEY, P.J., and HOFSTETTER, J., concur.

HOFSTETTER, J., retired, of the Eleventh Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.