STEWART, Admx., Appellant,

v.

CITY OF HUBBARD et al., Appellees.

[Cite as *Stewart v. Hubbard* (1991), 72 Ohio App.3d 301.]

Court of Appeals of Ohio,
Trumbull County.

No. 89–T–4183.

Decided Jan. 28, 1991.

*Patrick J. Donlin,* for appellant.

*Chris T. Nolan, James J. Gutbrod* and *Kenneth M. Inskeep,* for appellees.

---

CHRISTLEY, Presiding Judge.

This is an accelerated calendar case.

Early in the morning of April 26, 1984, a motor vehicle driven by Albert Carano, Jr. was stopped by the Hubbard police for having a noisy muffler. The vehicle was owned by Rodney Crytser, deceased, who was one of two passengers in the vehicle. Carano exited the vehicle at the request of the police and produced his driver's license and the vehicle registration. Carano stated that he had consumed a couple of beers.

Through the affidavit of one of the passengers in the vehicle, the appellant, Phyllis Stewart, administratrix of the estate of Rodney Crytser, claims that the officer who stopped Carano noticed an odor of an alcoholic beverage on his breath and conducted a series of field sobriety tests on him.

In their motion for summary judgment, appellees, the city of Hubbard and two Hubbard police officers, deny that the police noticed any alcoholic odor on the breath of the driver and deny conducting any field sobriety test on the driver.

Appellant also claims that, while the field sobriety tests were being conducted, another officer arrived at the scene and informed the stopping officer that the driver was his cousin. Appellees assert, however, that the stopping officer had already made a decision to give Carano a verbal warning to repair the noisy muffler when the second officer arrived at the scene and informed the stopping officer that the driver was his cousin.

Appellant further claims that one of the two officers asked both of the passengers if either could drive the vehicle home. For different reasons, they could not. Appellees deny that they asked if either of the passengers could drive the vehicle. Appellant claims that the police then warned Carano to drive directly home. Appellee stated that the warning given was to have the muffler repaired and that, while Carano admitted to drinking a couple of beers, he did not appear to be intoxicated nor did his driving appear to be impaired.

A short while later, and at a high rate of speed, Carano drove the vehicle left of center and into a tree, killing Crytser. Carano's blood-alcohol content was .13 percent.

Appellant filed a multimillion dollar suit against the city and the two officers on April 24, 1986 in the Trumbull County Court of Common Pleas. Since the complaint erroneously named as a defendant an officer not present at the scene, the complaint was later amended to correct this. The amended complaint was filed after the statute of limitations had run, and that officer's motion to dismiss and/or for judgment on the pleadings was granted on January 7, 1988.

Appellees filed a motion for summary judgment on November 20, 1987. On December 30, 1987, appellees filed a motion for leave to file their motion for summary judgment. This second motion indicated that the motion for summary judgment was filed after the trial had been set. While it is unclear exactly what date the case had been set for trial, it is evident from appellees' motion of December 30th that the motion for summary judgment was filed after the trial date had been set.

On January 6, 1988, appellant opposed the motion for summary judgment. The following day the trial court granted summary judgment in favor of appellees without ruling on appellees' motion for leave to file their motion for summary judgment. Appellant filed a notice of appeal on January 21, 1988.

On February 2, 1988, the court granted appellees' motion for leave to file a motion for summary judgment, almost four weeks after the court granted summary judgment for appellees and several days after appellant had filed her notice of appeal. The order granting appellees' motion for leave to file a motion for summary judgment prepared by the appellees indicated that a hearing date on the motion had been set for January 7, 1988 and showed that service to the appellant had been made on December 29, 1987. Nevertheless, the order was not signed and time-stamped until February 2, 1988.

On appeal, this court reversed the judgment of the trial court on the ground that appellees' motion for summary judgment was improperly filed without leave of court. *Stewart, Admx. v. Hubbard* (Sept. 16, 1988), Trumbull App. No. 4020, unreported, 1988 WL 96641.

On remand, appellees properly obtained leave of court and filed a second motion for summary judgment. They claimed that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law based upon the decision in *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468.

The trial court granted appellees' motion for summary judgment, finding there to be no genuine issue of material fact and that appellees were entitled to judgment as a matter of law.

Appellant timely filed a notice of appeal with the following assignment of error:

"The trial court erred to the prejudice of plaintiff-appellant in granting defendants-appellees' motion for summary judgment."

Appellant asserts that the trial court erroneously decided that there were no genuine issues of material fact and that appellees were entitled to judgment as a matter of law.

The Ohio Supreme Court stated in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

To determine whether appellees were entitled to summary judgment as a matter of law, it is necessary to determine whether there was a duty owed by the police officer to the decedent, Crytser. As a general proposition, a public official has a duty to the public rather than a specific individual. *Sawicki, supra,* paragraph two of the syllabus. There is, however, a special-duty exception to the general rule:

"In order to demonstrate a special duty or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Id.* at paragraph four of the syllabus.

If *any* of these four prongs fails, no special duty exists.

When applying the *Sawicki* test to the present case, no special duty to the deceased, Crytser, existed.

Specifically, there was no indication that the municipality assumed any affirmative duty to act on behalf of Crytser. Although appellant argues that

Officer Baker assumed an affirmative duty to act on behalf of Crytser, this assertion is not supported by the evidence. Appellant contends that the officer "learned that drinking was involved, * * * gave the driver sobriety tests, * * * attempt[ed] to find a sober driver * * *" and that someone instructed the driver to drive straight home.

Even assuming that these actions, which were denied by appellees, are true, such actions were not promises to act on the behalf of the deceased, Crytser; nor were there actions which should have led Crytser to believe the officer had assumed an affirmative duty to ensure his safety. If anything, the officer's actions should have put Crytser on notice that Carano's driving abilities may have been impaired; yet, Crytser chose to continue as a passenger.

The lack of an affirmative duty in the instant case becomes clearer by looking at other cases where affirmative duty was also in question. In *Epling v. Cardarelli* (1983), 13 Ohio App.3d 142, 13 OBR 175, 468 N.E.2d 335, a pre-*Sawicki* case, the court held that a sheriff, acting through his deputies in investigating the escape of a patient from a psychiatric hospital, owed no special duty to a particular individual and was not liable in damages to a third party when she was injured by the patient. Specifically, the sheriff's deputy visited the victim's house and assured her that she would be protected. After the deputy left, the escapee broke into the house, killing the victim's friend and injuring the victim. The court stated: "Even assuming Ohio would follow suit [in adopting the theory of a special duty owed by a law enforcement officer to an individual], the evidence in this case demonstrates [the victim] was never removed from membership within the public at large." *Id.* at 144, 13 OBR at 177, 468 N.E.2d at 337. Despite the deputy's assurances of protection and the victim's reliance on those assurances, the court stated that there would be no special duty to protect the victim.

On the other hand, the court in *Clemets v. Heston* (1985), 20 Ohio App.3d 132, 136, 20 OBR 166, 169, 485 N.E.2d 287, 291, held:

"This special relation arises upon arrest—*i.e.*, when the officer 'takes the custody' of another, as 'required by law.' * * * Once the relationship thus begins, the duty to act affirmatively to protect the arrestee from harm and provide for his care and safety continues for the duration of that relationship—*i.e.*, until the arrestee-prisoner is released from custody."

In light of the above case law, it is clear that appellant has failed to prove the first prong of the *Sawicki* test; the officer did not assume an affirmative duty to act on behalf of Crytser.

Turning to the second prong, the officer did not know that his inaction would lead to harm. Despite appellant's claim that the officer was seeking a

sober driver, Officer Baker's affidavit stated that the driver did not appear to be intoxicated, nor did his consumption of alcohol appear to affect his driving. Furthermore, even if it is established that field sobriety tests were taken, there is no evidence that the driver failed these tests or that the driver appeared unable to drive due to intoxication. As such, the second prong of *Sawicki* is not met.

Next, there must have been some form of direct contact between the officer and Crytser. At most, one of the officers asked Crytser whether he could drive the vehicle. Even if we considered this sufficient contact to satisfy the *Sawicki* test, which we do not, the other three prongs fail.

The fourth prong requires a finding that Crytser relied on the officer's affirmative undertaking. At the outset, it is worth restating, this court has not found any such affirmative duty to act on Crytser's behalf. In addition, there was no evidence that Crytser, in any way, did rely on the officer. In fact, Crytser trusted the driver to drive his car despite being put on notice of a possible problem with drinking.

Since appellant has failed to controvert or put at issue at least three prongs of the *Sawicki* test, she has failed to demonstrate the existence of a special-duty exception. This court accepts that there are conflicting matters of fact. However, if the conflicting facts are not material to the issue of whether a special duty exists, even if all the facts were construed in appellant's favor, no exception to the general rule is found. Therefore, as a matter of law, the trial court was correct in granting summary judgment. Accordingly, the appellant's single assignment is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, J., concurs.

JOSEPH E. MAHONEY, J., dissents.

JOSEPH E. MAHONEY, Judge, dissenting.

I respectfully dissent from the foregoing opinion based on the majority's conclusion that no special duty to the deceased existed.

It is clear from the record in this case that genuine issues of material fact do exist. The pertinent facts alleged by appellees and presented to the trial court by way of an affidavit of the Hubbard police officer who stopped the decedent's automobile are directly contradicted by an affidavit, submitted by appellant, of a passenger who was in the car on the night in question.

The most important discrepancies center on whether the Hubbard police officers had any indications that the driver, Albert Carano, Jr., was intoxicated. There is a conflict in the testimony whether he was given field sobriety tests or whether an attempt was made to find a different driver for the vehicle. There are also inconsistencies with respect to the timing of the arrival of the second officer in relation to when the first officer decided to let the driver continue driving.

These are important and material facts that reflect on such issues as the foreseeability of the accident, whether the officers had any reason to suspect that Carano had been drinking, and whether it was bad judgment, negligence, or intentional wrongdoing to allow Carano to continue driving. These are issues for the trier of fact, and it was improper for the trial court to grant summary judgment based, in part, on there being no genuine issue of material fact.

It is still necessary, however, to determine whether a special duty to Rodney Crytser could exist, given the facts as presented to the trial court. Each of the four requirements of the *Sawicki* test would have to be met.

Reviewing the record in the trial court, there is evidence which, if found to be credible, would satisfy the first requirement of the *Sawicki* test. In the affidavit submitted by appellant, one of the passengers in the car indicated that Officer Dennis Baker had reason to know that Carano was intoxicated. She explained how Carano was given a variety of field sobriety tests, and that the officer tried to find a substitute driver for the car. Upon discovering that nobody else was able to drive the car, the officer allegedly cautioned Carano to drive straight home. From these facts, a jury could conclude that the officer suspected that the driver was intoxicated. When Officer Baker first began the process of determining whether Carano was, in fact, intoxicated, was when Officer Baker, through his actions, assumed an affirmative duty to act on behalf of the passengers.

The logic employed by the majority on this issue is convoluted. The majority states that Crytser should have been put on notice that Carano's driving abilities may have been impaired because of the actions of the police officer. Clearly, however, a reasonable person's suspicions would have been laid to rest instead of heightened when the highly trained, professional law enforcement officer made the judgment that Carano's driving abilities were not impaired. Certainly, the public is entitled to trust the judgment of a police officer in determining whether a driver is so intoxicated as to be a hazard to himself and to others on the road. In this jurist's opinion, Officer Baker assumed an affirmative duty to act on behalf of Crytser.

Under the second prong of the *Sawicki* test, it must be shown that the police officer had knowledge that inaction could lead to harm. Once again, the evidence presented indicated Officer Baker administered field sobriety tests to Carano and then attempted to find another driver for the vehicle. If this evidence is determined to be credible, a jury could infer from it that the officer believed that the driver was intoxicated and that it was necessary to attempt to find a sober driver to prevent any harm from occurring. It is safe to assume that a police officer has knowledge of the harm that can be caused by a drunk driver.

On this issue, where there was clearly conflicting evidence presented, the majority apparently chose to accept Officer Baker's version of the events. In a summary judgment action, however, the law requires the trial court to view the evidence in a light most favorable to the party opposing the motion. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 46, 517 N.E.2d 904, 906. In the instant cause, appellant was the party opposing the motion and she presented evidence which, if believed by the trier of fact, strongly suggested that the police officer knew Carano was intoxicated. Therefore, the second prong of the *Sawicki* test was met.

The third prong of the test requires a showing of some form of direct contact between the police officer and the injured party. It is clear from the affidavit of the passenger that one of the police officers at the scene asked both her and the decedent if they would be able to drive the car. This certainly qualifies as direct contact. Appellees argue that, because the affidavit does not specify which officer questioned the passengers, it may have been the officer that is not a party to this action and, therefore, the requisite direct contact was lacking. Appellees overlook the fact that the affiant may be able to identify Officer Baker as the questioning officer at trial. Based on the foregoing analysis, the third prong of the *Sawicki* test has been met.

Finally, a showing must be made that the injured party justifiably relied on the police officer's affirmative undertaking. Once again, if the passenger's affidavit is found to be credible by the trier of fact, then there is evidence upon which reasonable minds could conclude that Rodney Crytser justifiably relied on the police officer's affirmative undertaking. Whether or not the decedent believed, before they were stopped by the police, that Carano was capable of driving his car, any doubt he may have had was removed when, after conducting field sobriety tests upon Carano, the police officer allowed him to continue driving. Such actions by trained police officers would indicate to the decedent that Carano would be able to safely continue driving. It is

certainly justifiable to rely on the opinion of a person whose job it is to determine whether a driver is intoxicated.

Since all four of the elements of the *Sawicki* test could be met depending on the credibility of the evidence, the trial court erred in determining that appellees were entitled to judgment as a matter of law.

Based on the foregoing analysis, I would reverse the decision of the trial court and remand the cause for further proceedings. I cannot agree with the logic expressed by the majority and I must, therefore, respectfully dissent.